**TOHO TITANIUM COMPANY, LTD., Plaintiff,**

v.

**The UNITED STATES, the United States Department of Commerce, and the United States International Trade Commission, Defendants,**

**and**

**RMI Company and Titanium Metals Corporation of America, Intervenors.**

**Court No. 85–1–00024.**

United States Court of International Trade.

March 13, 1987.

Graham & James, Denis H. Oyakawa, James H. Broderick, Jr. and Patrick J. Fields, Los Angeles, Cal., for plaintiff.

Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civ. Div., Dept. of Justice, Sheila N. Ziff, Washington, D.C.; Lisa B. Koteen, Office of the Deputy Chief Counsel for Import Admin., for defendants.

Wilmer, Cutler & Pickering, A. Douglas Melamed, John D. Greenwald and Deborah M. Levy, Washington, D.C.; John F. Hornbostel, Jr., New York City, RMI Co., for intervenors RMI Co.

Pillsbury, Madison & Sutro, Donald E. deKieffer and Francis J. Sailer, Washington, D.C.; Frederick W. Steinberg, Pittsburgh, Pa., Titanium Metals Corp. of America, for intervenor Titanium Metals Corp. of America.

DiCARLO, Judge:

Toho Titanium Company, Ltd. (Toho), a Japanese exporter of titanium sponge, challenges a final determination by the United States Department of Commerce, International Trade Administration (Commerce) that titanium sponge from Japan is being sold in the United States at less than fair value. *Titanium Sponge From Japan: Final Determination of Sales at Less Than Fair Value,* 49 Fed.Reg. 38,687 (October 1, 1984). Pursuant to Rule 56.1 of the rules of this Court, Toho moves for a judgment upon the agency record, asserting Commerce erred in its determination to use constructed value rather than sales of titanium sponge in Japan as the basis for determining foreign market value. The action is remanded for an explanation by Commerce why Toho's sales below the cost of production are not at prices which would

allow recovery of all costs within a reasonable period of time in the normal course of trade.

## BACKGROUND

On November 28, 1983, the RMI Company (RMI) filed an antidumping petition with Commerce on behalf of the United States titanium sponge industry. The petition alleged that imports of titanium sponge from Japan were being, or were likely to be, sold in the United States at less than fair value and that such imports were materially injuring or threatening to materially injure the United States titanium sponge industry. The petition further alleged that sales of titanium sponge in the home market of Japan were being made at less than the cost of production. After evaluation of the petition, Commerce decided to initiate an antidumping investigation and published notice of such decision. *See Titanium Sponge From Japan; Initiation of Antidumping Investigation,* 48 Fed.Reg. 56,-815 (December 23, 1983).

On December 30, 1983, Commerce presented antidumping questionnaires to the three known Japanese producers and exporters of titanium sponge—Nippon Soda Co., Osaka Titanium Co., Ltd. and Toho. The questionnaires requested data respecting sales and production costs for a six-month period covering June 1, 1983 to November 30, 1983.

Based on the questionnaire responses, Commerce made a preliminary determination that Japanese titanium sponge was being sold, or was likely to be sold, at less than fair value in the United States. *Preliminary Determination of Sales at Less Than Fair Value; Titanium Sponge From Japan,* 49 Fed.Reg. 20,042 (May 11, 1984). In that preliminary determination, Commerce stated with respect to the determination of foreign market value:

In accordance with section 773(a)(1) of the Act, we used home market prices or constructed value to determine foreign market value. The petitioner alleged that sales in the home market were at prices below the cost of producing titanium sponge. In order to determine the

cost of production, we examined production costs, including materials, labor and general expenses.

Where sales of merchandise under investigation were made over an extended period of time in substantial quantities, and at prices that did not permit recovery of all costs within a reasonable period of time in the normal course of trade, we disregarded these sales in our analysis in accordance with section 773(b) of the Act. Where sufficient sales of the merchandise under investigation were made at or above the cost of production, we used them in making price-to-price comparisons with sales in the U.S. market. Where sales of the merchandise under investigation above the cost of production were inadequate to provide a basis for foreign market value, we used constructed value to determine foreign market value.....

We compared Toho's home market sales to its cost of production. We found that all sales were made at less than cost. Therefore, we used constructed value as the basis of foreign market value. We found that all U.S. sales were made at less than the constructed value.

49 Fed.Reg. at 20,042–43.

In its prehearing brief, Toho argued that six months did not constitute "an extended period of time" of below costs sales for the titanium sponge industry and that six months is an insufficient period for collecting data to determine what is "an extended period of time" or whether Toho's prices would allow recovery of costs "over a reasonable period of time," as required by section 773(b) of the Tariff Act of 1930 (the Act), as amended, 19 U.S.C. § 1677b(b) (1982). Toho requested that Commerce use actual home market sales prices to calculate foreign market value or, alternatively, to determine whether Toho's prices would permit recovery of all costs over the company's business cycle.

At the hearing on July 25, 1984 and in its posthearing brief, Toho again requested that Commerce assess whether Toho's prices would permit recovery of all costs over the company's business cycle. In re-

sponse to a letter sent by Toho dated August 21, 1984, Commerce replied by letter dated September 24, 1984 that it would not consider Toho's position both because the argument was made too late in the investigation to allow verification or comment and because the data submitted by Toho was inadequate to support its position.

In its final determination, Commerce stated:

> In accordance with section 773(a)(2) of the Act, we used constructed value to determine foreign market value. The petitioner alleged that sales in the home market were at prices below the cost of producing titanium sponge. In order to determine the cost of production, we examined production costs, including materials, labor and general expenses.
>
> We found that all non-U.S. sales of the merchandise under investigation were made over an extended period of time in substantial quantities, and at prices that did not permit recovery of all costs within a reasonable period of time in the normal course of trade. Therefore, we disregarded these sales in our analysis in accordance with section 773(b) of the Act. Instead, we used constructed value to determine foreign market value.

49 Fed.Reg. at 38,688.

Commerce also responded to Toho's position concerning the use of constructed value rather than home market sales:

> Comment 1: Toho aserts that the Department must determine that its home market sales at less than the cost of production (1) have been made over an extended period of time and (2) are not at prices which permit recovery of all costs within a reasonable period of time in the normal course of trade, pursuant to section 773(b) of the Act. Toho argues that the six-month period which the Department examined is not and "extended period of time" nor a "reasonable period" within the meaning of the Act.
>
> DOC Position: Toho submitted the company's plant utilization data for 10 years to support its allegation that the titanium sponge industry was in a trough in its business cycle during the period of

investigation and that Toho's prices would allow recovery of all costs over a "reasonable period of time," were that period to include an entire business cycle. The adjustment was not considered by the Department because the information (1) did not justify Toho's position that its prices would recover all costs over a "reasonable period of time," and (2) was not submitted in a timely manner.

49 Fed.Reg. at 38,691.

On November 30, 1984, Commerce published an antidumping duty order regarding titanium sponge from Japan, imposing a required cash deposit of estimated antidumping duties of 34.25 percent on entries of titanium sponge manufactured by Toho. *See* 49 Fed.Reg. 47,053 (1984). Toho timely brought this action to contest that final order. The Court granted motions to intervene by RMI and Titanium Metals Corporation of America.

## OPINION

In its motion for judgment upon the agency record, Toho is seeking a review of an antidumping duty order under section 516A(a)(2) of the Act, as amended, 19 U.S.C. § 1516a(a)(2) (1982). The standard of review of such action by the Court is set forth in 19 U.S.C. § 1516a(b)(1)(B) which states that "[T]he court shall hold unlawful any determination, finding, or conclusion found to be unsupported by substantial evidence on the record or otherwise not in accordance with law."

Toho argues that Commerce must use sales in the home market, Japan, to calculate foreign market value unless it determines pursuant to section 773(b) of the Act, as amended, 19 U.S.C. § 1677b(b) (1982) that home market sales have been made at a price less than the cost of production over an extended period of time in substantial quantities and at prices which will not permit recovery of all costs within a reasonable period of time in the normal course of trade. Toho claims that Commerce did not make these determinations, and even if such determinations were made they are not supported by substantial evidence on the record.

The relevant portion of section 1677b(b) states:

If the administering authority determines that sales made at less than cost of production—

(1) have been made over an extended period of time and in substantial quantities, and

(2) are not at prices which permit recovery of all costs within a reasonable period of time in the normal course of trade,

such sales shall be disregarded in the determination of foreign market value.

19 U.S.C. § 1677b(b) (1982).

In both the preliminary and final determinations, Commerce states, albeit in a conclusionary fashion, that these two determinations were made:

Where sales of merchandise under investigation were made over an extended period of time in substantial quantities, and at prices that did not permit recovery of all costs within a reasonable period of time in the normal course of trade, we disregarded these sales in our analysis in accordance with section 773(b) of the Act. Where sufficient sales of the merchandise under investigation above the cost of production were inadequate to provide a basis for foreign market value, we used constructed value to determine foreign market value.

. . . .

We compared Toho's home market sales to its cost of production. We found that all sales were made at less than cost. Therefore, we used constructed value as the basis of foreign market value. We found that all U.S. sales were made at less than the constructed value.

49 Fed.Reg. at 20,042 (preliminary determination).

We found that all non-U.S. sales of the merchandise under investigation were made over an extended period of time in substantial quantities, and at prices that did not permit recovery of all costs within a reasonable period of time in the normal course of trade. Therefore, we disregarded these sales in our analysis in accordance with section 773(b) of the Act.

Instead, we used constructed value to determine foreign market value.

49 Fed.Reg. at 38,688 (final determination).

Despite the result-oriented manner in which Commerce conveyed its determinations concerning these two requirements of section 1677b(b), the Court cannot say that the determinations were not made by Commerce. The sufficiency of Commerce's explanation of its reasoning underlying the determinations is discussed later in assessing whether the determinations are supported by substantial evidence on the record.

Commerce made its determinations with respect to these two aspects of section 1677b(b) based upon questionnaire responses that provided data covering a six-month period. Toho argues first that Commerce only chose a six-month period for investigation because it is the standard response time for any investigation. Even if true, this does not mean that data from a six-month period is insubstantial evidence on the record to support Commerce's determinations.

■ Commerce has implemented a regulation which provides a framework for all its cost of production and sales investigations:

(a) Upon publication of the notice of "Initiation of Anti-dumping Investigation," the Secretary shall proceed promptly to obtain such information as may be necessary for preliminary and final determinations of sales at less than fair value. The Secretary normally will examine at least 60 percent of the dollar volume of exports to the United States from any country subject to an antidumping investigation. Ordinarily the Secretary will require a foreign manufacturer, producer, or exporter subject to the investigation to submit pricing information covering a period of at least 150 days prior to, and 30 days after, the first day of the month during which the petition was received in acceptable form. The Secretary may, however, require the submission of pricing information for such other period as he deems necessary and he

may also require the submission of pricing information on a current basis during the course of an investigation. Where appropriate, cost information also will be required.

19 C.F.R. § 353.38(a) (1983). The regulation does provide that an investigation ordinarily covers approximately six-months, but gives the Secretary discretion to collect sales and cost information for a longer or shorter period of time as he deems necessary.

The Court finds that on its face the regulation does not contravene section 1677b(b). In evaluating Commerce's practice pursuant to the regulation, the Court must look at each case independently to assess whether the evidence produced during the investigation provides substantial evidence on the record to support the determinations required by statute.

Toho argues that data collected over a six-month period of time is insufficient evidence for Commerce to determine that sales below the cost of production have been made for an extended period of time in the titanium sponge industry. Toho asserts that Congress intended that the determination of what is an extended period of time be based upon an examination of the business conditions of the relevant industry and that a six-month "snapshot" of the highly cyclical and capital intensive titanium sponge industry during a trough in the industry's business cycle circumvents that intent.

Congress did not provide a specified time period in section 1677b(b). While the absence of a standard period of time indicates that such determination should be made after review of the particular industry under investigation, nothing in the statute or legislative history requires Commerce to adopt a business cycle analysis in its investigation of the relevant industry before making its determination.

The legislative history of section 321 of the Trade Act of 1974, which added subsection (b) to section 205 of the Antidumping Act of 1921, the predecessor to section 1677b(b), indicates that Congress sought to disallow home market sales in determining foreign market value only where such sales were "uniformly made at less than the cost of production." Congress did not expect below costs sales to be disregarded in every instance, especially if there were sufficient numbers of above costs sales and the sales at below cost of production resulted from unique circumstances such as the necessity "to sell obsolete or end-of-model year merchandise at less than cost." Essentially, Congress requires that when home market sales below cost of production are made in substantial quantities and over an extended period of time then home market sales should be disregarded, but that when such home market below costs sales are infrequent, home market sales should not be disregarded. *See* S. Rep. No. 1298, 93rd Cong., 2d Sess. 173 (1974), *reprinted in* 1974 U.S.Code Cong. & Ad. News 7186, 7310; H.R.Rep. No. 571, 93rd Cong., 2d Sess. 71 (1973).

■ In the present action, verified confidential responses to the questionnaires sent by Commerce to Toho and the other Japanese titanium sponge manufacturers reveal that home market sales below the cost of production were made frequently as opposed to infrequently. Toho does not deny that it made substantial quantities of below cost of production sales in each of the months investigated.

The Court finds that the concern of Congress that sales in the home market not be disregarded if sales below cost of production occurred only sporadically or resulted from a typical, brief business practice is allayed in this case. The Court holds that there is substantial evidence on the record supporting Commerce's determination that below cost of production sales were made over an extended period of time and in substantial quantities for the Japanese titanium sponge industry.

■ The next question concerns Commerce's determination that the prices of sponge sold below cost of production will not permit recovery of all costs within a reasonable period of time. Although Commerce found all sales by Toho during a six-month period were at prices below the

cost of production, Commerce does not explain why Toho will not be able to recoup its costs from sales at the prices charged over a reasonable period of time in the normal course of trade. An explanation on the record discussing this determination is necessary for the Court to conduct a proper judicial review. *See Southwest Florida Winter Vegetable Growers Ass'n v. United States,* 7 CIT 99, 103–05, 584 F.Supp. 10, 15–16 (1984).

Central to a proper determination by Commerce is some discussion on the record as to why the prices charged on sales by Toho will not allow recovery of its costs in a reasonable period of time. For example, if there is no change in Toho's cost of production then future sales at the prices charged during the investigatory period below cost logically could never recover all costs. If the cost of production declines in the future below the investigatory prices, however, then such prices may allow recoupment of all costs at some future date, and Commerce must determine whether the time necessary for complete recoupment is a "reasonable period of time in the normal course of trade" under section 1677b(b).

Toho says that Commerce cannot properly make a determination whether costs will be recovered within a reasonable period of time using only a six-month "snapshot" of the Japanese titanium sponge industry. Toho argues that an investigation of its entire business cycle would reveal that it could recoup its losses even at the prices charged below cost of production during the investigatory period and that its business cycle is a reasonable period of time for recovery of all costs, especially since the titanium sponge industry is highly capital intensive and cyclical.

Section 1677b(b) does not state that a business cycle analysis be made of a particular company in determining whether costs will be recovered within a reasonable period of time in the normal course of trade. Nor does the legislative history indicate that Congress requires a company's business cycle be evaluated in determining what would be a reasonable period of time for such recoupment.

The legislative history of section 321 of the Trade Act of 1974 does indicate that Commerce should evaluate the sales of certain products, such as commercial aircraft, which "typically require large research and development costs which could not reasonably be recovered in the first year or two of sales." Congress states that such guidance is offered so that "sales at prices which will permit recovery of all costs based upon anticipated sales volume over a reasonable period of time would not be disregarded" in determining foreign market value. *See* S. Rep. No. 1298 at 173, *reprinted in* 1974 U.S. Code Cong. & Ad. News at 7310; H.R.Rep. No. 571 at 71. This shows Congress intended that the prices charged below cost of production should be analyzed to determine whether such prices will permit recovery of all costs based upon anticipated sales volume over a reasonable period of time in the normal course of trade.

The Court finds that Commerce must evaluate the prices charged by Toho during the investigatory period in relation to projected cost of production and anticipated future sales in determining whether such prices will allow recovery of all costs in a reasonable period of time in the normal course of trade and that Commerce may rely on data covering only a six-month period in making the determination. The action is remanded for Commerce to explain its determination, so the Court can properly review whether the evidence on the record supports the analysis.

Commerce shall file with the Court within 30 days its explanation regarding the determination that Toho's prices on sales below the cost of production will not allow recovery of all costs within a reasonable period of time in the normal course of trade. Plaintiff shall file any comments on the results of the remand within 15 days after the filing of Commerce's explanation, and defendant shall respond within 10 days after the filing of plaintiff's comments.

So ordered.