**TOHO TITANIUM COMPANY, LTD., Plaintiff,**

**v.**

**The UNITED STATES, the United States Department of Commerce, and the United States International Trade Commission, Defendants,**

**and**

**RMI Company and Titanium Metals Corporation of America, Intervenors.**

**Court No. 85-1-00024.**

United States Court of
International Trade.

Decided Aug. 24, 1988.

Graham & James, Denis H. Oyakawa, James H. Broderick, Jr. and Patrick J. Fields, Los Angeles, Cal., for plaintiff.

John R. Bolton, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, Sheila N. Ziff, Lisa B. Koteen, Office of the Deputy Chief Counsel for Import Admin., U.S. Dept. of Commerce, Washington, D.C., for defendants.

Wilmer, Cutler & Pickering, A. Douglas Melamed, John D. Greenwald and Deborah M. Levy, Washington, D.C., John F. Hornbostel, Jr., RMI Co., Niles, Ohio, for intervenor RMI Co.

Pillsbury, Madison & Sutro, Donald E. deKieffer and Francis J. Sailer, Washington, D.C.; Frederick W. Steinberg, Titanium Metals Corp. of America, Pittsburgh, Pa., for intervenor Titanium Metals Corp. of America.

DiCARLO, Judge:

This action is before the Court following a second remand to the International Trade Administration of the United States Department of Commerce (Commerce). The Court now affirms Commerce's use of constructed value, rather than home market sales, as the foreign market value that was compared to the United States price to determine that Japanese titanium sponge is sold in the United States at less than fair value.

## BACKGROUND

Under the Tariff Act of 1930, as amended, dumping margins are measured by calculating the amount by which foreign market value exceeds the United States price of the same or similar merchandise. 19 U.S.C. § 1673 (1982 & Supp.IV 1986). Under section 773(b) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1677b(b) (1982), Commerce may not disregard home market sales at less than the cost of production in determining foreign market value unless it determines that those sales "are not at prices which permit recovery of all costs within a reasonable period of time in the normal course of trade...."

Toho Titanium Company, Ltd. (Toho), a Japanese exporter of titanium sponge, challenged Commerce's determination to disregard home market sales in Japan in favor of a constructed value to represent foreign market value in determining that titanium sponge from Japan is being sold in the United States at less than fair value. *See Titanium Sponge From Japan: Final Determination of Sales at Less Than Fair Value,* 49 Fed.Reg. 38,687 (Oct. 1, 1984).

*Toho I* affirmed Commerce's finding that substantial amounts of Japanese titanium sponge were sold over an extended period below the cost of production, but remanded for Commerce to explain why Toho's sales below the cost of production are not at prices which would allow recovery of all costs within a reasonable period in the normal course of trade. *Toho Titanium Co. v. United States,* 11 CIT ——, 657 F.Supp. 1280 (1987).

*Toho II* rejected the remand results because they did not sufficiently explain Commerce's finding that Toho could not recover costs over a reasonable period in the normal course of trade from sales at the prices charged during the investigatory period. *Toho Titanium Co. v. United States,* 11 CIT ——, 670 F.Supp. 1019 (1987).

## DISCUSSION

The Court's concern in *Toho I* and *Toho II* was that Commerce had failed to adequately address the possibility that Toho might justify a loss over an extended period if Toho reasonably expected production costs to decrease because of more efficient production and the averaging of initial investment costs over time. Confronted with a similar issue in *Timken Co. v. United States,* 11 CIT ——, 673 F.Supp. 495, 516 (1987), the court stated:

> that in order to determine whether costs will eventually be recovered by sales at below-cost prices, it is necessary to consider factors such as how far below cost the sales are; how much, if at all, costs of production are expected to decline; and the period of time over which they are expected to decline.

In the second remand results, Commerce has explained the various factors which comprise Toho's computed cost of production of titanium sponge. Many costs incurred during the period of investigation which would benefit Toho in the future were not included in the cost of production, such as costs stemming from efforts to increase raw material, work-in-process and finished goods inventories, and costs of prepaying consumption taxes and insur-

ance. Other costs that Toho incurred were allocated over a period beyond the period of investigation, such as costs of machinery and equipment (depreciated over 7 years), buildings (depreciated over 30 years), and major maintenance expenses (depreciated over remaining useful life of the repaired equipment or machinery).

An effect of computing the cost of production in this manner is to normalize the cost of production over time. The review period cost of production reflects the averaging of some initial start-up costs, or in the case of Toho, which was already producing titanium sponge, the averaging over time of several one-time major expenditures such as machinery and building purchases. It also normalizes certain preparation expenditures, such as various increased inventory costs or insurance and consumption tax prepayments, which were properly deferred to future production as inapplicable to the investigatory period. This calculation of cost of production does not necessarily capture other extraordinary costs incurred during the review period which could distort the normal cost of production and ignores the possibility of more efficient production in the future.

In submitting its cost of production data, Toho identified certain extraordinary costs, including costs associated with idling, discontinuing and starting-up certain facilities, surplus personnel, and research and development (R & D). Commerce disallowed any adjustment for these extraordinary expenses in computing the cost of production. Toho did not challenge Commerce's decision to disallow these adjustments.

During the second remand, Commerce included these extraordinary costs to construct a cost of production. Commerce characterized these costs associated with start-up, low production levels, and unused capacity as "efficiency" costs and the hypothetical cost of production as representative of what Toho's costs would be if it had been efficiently using its production facilities. *See Results of Second Remand Proceeding*, 10–14. *See also* Attachment I, *Memo for Titanium Sponge Team from Director, Office of Policy*, 2 (Dec. 30,

1987); Second Remand R.Doc. 1, 1–2; Second Remand R.Doc. 2, 4–5; Conf.R.Doc. 52, 5–7. Commerce then compared this hypothetical cost of production with the investigatory sales prices and found that all but one sale were made at prices below the hypothetical cost of production.

Commerce allocated Toho's R & D costs in constructing the hypothetical cost of production in a manner similar to new equipment and new building costs. Commerce allocates R & D expenses associated with the investigated article's production over the number of years the product will be produced or on the basis of the number of units to be produced. This avoids the problems associated with projects having large research and development costs, that could not be recovered in the first year or two of sales, such as the commercial aircraft example provided in the legislative history of 19 U.S.C. § 1677b(b) (1982), *see* S.Rep. No. 1298, 93rd Cong., 2d Sess. 173 (1974), *reprinted in* 1974 U.S.Code Cong. & Admin. News 7186, 7310; H.R.Rep. No. 571, 93rd Cong., 1st Sess. 71 (1973), and highlighted by the Court in *Toho I*, 11 CIT at ——, 657 F.Supp. at 1286, and *Toho II*, 11 CIT at ——, 670 F.Supp. at 1021.

■ Toho challenges Commerce's attempt to normalize the cost of production, arguing that its submission of the extraordinary costs data was not for purposes of projecting future production costs. Toho's intention in submitting the data, however, does not dictate how the data may be used. Commerce may use reliable data in the record for proper purposes it finds necessary in administering the law, subject to judicial review to assess whether Commerce's determinations are supported by substantial evidence and according to law.

Toho claims several other factors affect future production costs and argues Commerce's attempt to normalize a cost of production is a poor projection. The Court agrees that many factors can decrease future cost of production, including decreases in production material prices, increases in a factory's capacity utilization, changes in the tax rate, or even lower labor pay scales. Additionally, through other factors

**1194**

such as technological advances, managerial streamlining, and even a production worker suggestion box, a company will naturally learn how to make its operations more efficient and thereby decrease its costs of production. Commerce admits the inherent difficulties in projecting a future cost of production because of the many unknown variables. For this action, however, the Court finds it reasonable for Commerce to rely on Toho's candid responses on its expected declines in future production costs as a reliable gauge of the expected effect of more efficient manufacturing.

Commerce also considered anticipated future sales, which would increase Toho's capacity utilization and decrease its unit cost of production. Defendant states:

> Toho has never alleged that it "expected" sales to increase and there is no evidence on the record that its sales might increase. Manifestly, in the absence of evidence, or even a claim, as to increased future sales, Commerce is precluded from making an affirmative determination that, in the future, Toho might have either a higher volume of sales or sales of larger quantities of titanium sponge.

*Defendant's Reply to Plaintiff's Response to Results of Second Remand,* at 9. In the absence of any indication that Toho anticipated a change in sales that would permit it to recover its costs over a reasonable period of time in the normal course of trade, the Court finds it reasonable for Commerce to focus in the second remand results upon whether costs would become lower in making a determination as to production cost recovery.

■ Since Toho's costs of production, including extraordinary costs, remains below the investigatory sales prices in all but one instance, it is unlikely that Toho will be able to recover its costs in any reasonable period of time. Based upon the evidence in this record, Commerce did not need to define "a reasonable period" for Toho to recover costs in the normal course of trade. The Court still cautions that in the absence of formal rulemaking procedures, *see Carlisle Tire & Rubber Co. v. United States,*

10 CIT ——, 634 F.Supp. 419, 423 (1986), Commerce should not assume as a matter of department practice that a company cannot recoup its costs in a reasonable period even where 100% of home market sales over the investigatory period are made below cost. *Toho II,* 11 CIT at ——, 670 F.Supp. at 1021.

## CONCLUSION

The Court finds there is substantial evidence in the record as a whole to support Commerce's determination that Toho could not recoup its costs over any reasonable period of time in the normal course of trade from sales made at the prices charged during the investigatory period. Having reviewed Commerce's remand results and the comments of all interested parties, the Court finds Commerce's determination under 19 U.S.C. § 1677b(b) (1982) to use constructed value rather than home market sales to represent foreign market value to be supported by substantial evidence on the record as a whole and according to law. The action is dismissed.