**KOYO SEIKO CO., LTD. and Koyo Corporation of U.S.A., Plaintiffs,**

**and**

**Isuzu Motors Limited and American Isuzu Motors Inc., Plaintiff–Intervenors,**

v.

**UNITED STATES, Defendant,**

**and**

**The Timken Company, Defendant–Intervenor.**

**Court No. 90–10–00546.**

United States Court of International Trade.

Jan. 8, 1993.

Order Granting Modification March 10, 1993.

---

**13.** Reply Memorandum in Support of Plaintiff's    Motion for Summary Judgment, pp. 4–5 n. 2.

**1288**

Powell, Goldstein, Frazer & Murphy, Peter O. Suchman, Susan P. Strommer and T. George Davis, Washington, DC, for plaintiffs.

Paul, Weiss, Rifkind, Wharton & Garrison, George Kleinfeld, Washington, DC, for plaintiff-intervenors.

Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civil Div., U.S. Dept. of

Justice, Velta A. Melnbrencis, of counsel; Joan L. MacKenzie, Atty.–Advisor, Office of the Chief Counsel for Import Admin., U.S. Dept. of Commerce, Washington, DC, for defendant.

Stewart and Stewart, Eugene L. Stewart, Terence P. Stewart, James R. Cannon, Jr., John M. Breen and Margaret E.O. Edozien, Washington, DC, for defendant-intervenor.

TSOUCALAS, Judge:

Plaintiffs, Koyo Seiko Co., Ltd. and Koyo Corporation of U.S.A. ("Koyo"), move pursuant to Rule 56.1 for judgment on the agency record, challenging the final results of the Department of Commerce, International Trade Administration ("Commerce"), for entries of Koyo and NSK tapered roller bearings ("TRB's") made during the period August 1, 1986 through July 31, 1987. *Tapered Roller Bearings Four Inches or Less in Outside Diameter and Certain Components Thereof From Japan; Final Results of Antidumping Duty Administrative Review* ("Final Results"), 55 Fed. Reg. 38,720 (1990). On September 21, 1987, Commerce published a notice of initiation of antidumping and countervailing duty administrative reviews. *Initiation of Antidumping and Countervailing Duty Administrative Reviews; France et al.*, 52 Fed.Reg. 35,466 (1987). On August 16, 1989, Commerce published the preliminary results of this administrative review and determined dumping margins of 67.40% and 33.62% *ad valorem* for Koyo and NSK respectively. *Tapered Roller Bearings Four Inches or Less in Outside Diameter and Certain Components Thereof From Japan; Preliminary Results of Antidumping Duty Administrative Review*, 54 Fed.Reg. 33,749 (1989). Commerce's subsequent recalculation of the margin for Koyo resulted in a preliminary dumping margin of 33.66% *ad valorem* for Koyo. *See* Administrative Record ("AR") (Pub.) Doc. 303. Commerce published the Final Results of the administrative review on September 20, 1990 determining dumping margins of 52.17% and 35.00% *ad valorem* for Koyo and NSK respectively. *Final Results*, 55 Fed.Reg. at 38,729.

Koyo now contests several actions undertaken by Commerce in calculating the final dumping margins. Specifically, Koyo objects to (1) Commerce's use of constructed value; (2) Commerce's comparison of U.S. and home market sales across different levels of trade; (3) Commerce's refusal to add direct selling expenses in calculating foreign market value; (4) Commerce's disregard for Koyo's home market sales below cost; and (5) several computer programming errors.

DISCUSSION

In reviewing a final determination of Commerce, this Court must uphold that determination unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B) (1988 & 1992 Supp.). Substantial evidence has been defined as being "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477, 71 S.Ct. 456, 459, 95 L.Ed. 456 (1951) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)). It is "not within the Court's domain either to weigh the adequate quality or quantity of the evidence for sufficiency or to reject a finding on grounds of a differing interpretation of the record." *The Timken Co. v. United States*, 12 CIT 955, 962, 699 F.Supp. 300, 306 (1988), *aff'd*, 894 F.2d. 385 (Fed.Cir.1990).

1. *Commerce's Use of Constructed Value*

■ Plaintiffs first claim that Commerce's use of constructed value in determining dumping margins was an abuse of discretion and contrary to law. The law directs Commerce to calculate dumping margins by determining "(A) the foreign market value and United States price of each entry of merchandise subject to the anti-dumping duty order," and "(B) the amount, if any, by which the foreign market value of each such entry exceeds the United States price of the entry." 19

U.S.C. § 1675(a)(2) (1988 & 1992 Supp.). The statute defines foreign market value as the price at which "such or similar merchandise" is sold or offered for sale in the exporting country. 19 U.S.C. § 1677b(a)(1) (1988 & 1992 Supp.). "Such or similar merchandise" is defined as "merchandise which is the subject of an investigation and other merchandise which is identical in physical characteristics." 19 U.S.C. § 1677(16) (1988 & 1992 Supp.). If identical merchandise was not sold in the home market, Commerce is to compare similar merchandise defined as "merchandise like that merchandise in component material or materials and in the purposes for which used" and "approximately equal in commercial value." *Id.* However, if the foreign market value cannot be determined in this manner, the statute requires that the "constructed value" of such merchandise be used. 19 U.S.C. § 1677b(a)(2) (1988 & 1992 Supp.).

In this case, Commerce's methodology for selecting similar home market merchandise was based on an analysis of five physical criteria. *Final Results,* 55 Fed.Reg. at 38,725. To find similar merchandise, Commerce summed the total differences in each of these five characteristics between the U.S. and the home market models. Commerce then ranked home market models based on their overall absolute deviation of all five criteria as compared to the U.S. model, and selected a pool of ten potential home market similar models. Commerce applied a test to determine if the *most* similar of the ten home market models had a significant difference in cost of manufacture from its U.S. counterpart. *Id.* If this difference was greater than twenty percent, then Commerce rejected the model for purposes of comparison to the U.S. model. *Id.* Once the first most similar model was rejected, Commerce refused to consider the other nine models in the pool of potential similar models. Commerce rather calculated home market value based on constructed value. Thus, Koyo claims that this was an abuse of discretion and that the case should be remanded to Commerce for the consideration of all potential home market similar merchandise and to avoid whenever

possible the use of constructed value. Commerce agrees. Therefore, this case is remanded to Commerce so that the twenty percent test used by Commerce in selecting merchandise of equal commercial value could be applied in such a manner as to ensure that the home market models considered similar to United States models would, in fact, be compared with similar United States models in instances in which there are no home market models.

### 2. *Sales Across Different Levels of Trade*

■ Secondly, Koyo claims that Commerce's comparison of U.S. and home market sales "across different levels of trade" is not supported by substantial evidence and is contrary to law. Koyo's argument is meritless.

As Commerce explained in the final results, based upon data submitted by Koyo regarding the presence of two levels of trade in the home market and the U.S. market, Commerce initially attempted to make its comparison of sales at the same level of trade, and when no identical home market sales were discovered, Commerce then searched the same level of trade for sales of the next similar model before searching the next level of trade for identical merchandise. *Final Results,* 55 Fed. Reg. at 38,726. Therefore, Koyo's argument that Commerce failed to fulfill its obligation to search the same level of trade is erroneous.

This Court on several occasions has affirmed Commerce's selection of most similar merchandise sold in the home market when alternative levels were unavailable. *See NTN Bearing Corp. of America v. United States,* 14 CIT 623, 634, 747 F.Supp. 726, 736 (1990); *The Timken Co. v. United States,* 11 CIT 786, 793, 673 F.Supp. 495, 504 (1987); *Koyo Seiko Co. v. United States,* 16 CIT ——, ——, 796 F.Supp. 1526, 1532 (1992). Furthermore, the Court refused to recognize a "level of trade" argument similar to Koyo's in *NTN Bearing Corp.,* 14 CIT at 634, 747 F.Supp. at 736, stating:

With respect to plaintiffs' contention that the ITA's disregard of levels of

trade differences is contrary to law, plaintiffs have not provided, nor has the court uncovered any support for this argument. To the contrary, this court has noted previously that there is no statutory mandate requiring Commerce to remain within the same level of trade while effecting its "such or similar merchandise" determination. [Citation omitted.] Plaintiffs, therefore, have no basis for requesting that the Court require Commerce to limit its comparisons by the level of trade in which the sales occur.

Thus, Commerce's comparison of sales across different levels of trade was in accordance with law.

■ Koyo also argues that Commerce's methodology is contrary to Article 2(6) of the Agreement on Implementation of Article VI of the General Agreement on Tariffs and Trade ("GATT") (1979).

Article 2(6) of the GATT, titled "Determination of Dumping," specifies that:

In order to effect a fair comparison between the export price and the domestic price in the exporting country (or the country of origin) or, if applicable, the price established pursuant to the provisions of Article VI:1(b) of the General Agreement, the two prices shall be compared at the same level of trade, normally at the ex-factory level, and in respect of sales made at as nearly as possible the same time. *Due allowance* shall be made in each case, on its merits, for the differences in conditions and terms of sale, for the differences in taxation, and for the other differences affecting price comparability.

*Id.* (emphasis added).

Koyo argues that compliance with the GATT mandates comparison of sales at the same level of trade. The GATT places no such limitation on Commerce's selection of comparison merchandise. The statutory provision itself clearly makes exception and allows for the adjustment of prices when sales are made under different terms and conditions which shall have effect on the price comparability. Therefore, the discretion of the regulating authorities is clearly

permitted and codified within this provision.

■ Koyo argues that Commerce's methodology is contrary to this article. Even if it was, the Court of Appeals for the Federal Circuit recently stated in *Suramerica de Aleaciones Laminadas, C.A. v. United States,* 966 F.2d 660 (Fed.Cir.1992) that our domestic law, not the GATT, governs. The court stated:

[E]ven if we were convinced that Commerce's interpretation conflicts with the GATT, which we are not, the GATT is not controlling. While we acknowledge Congress's interest in complying with U.S. responsibilities under the GATT, we are bound not by what we think Congress should or perhaps wanted to do, but by what Congress in fact did. The GATT does not trump domestic legislation; if the statutory provisions at issue here are inconsistent with the GATT, it is a matter for Congress and not this court to decide and remedy.

*See Id.* at 667; *see also Algoma Steel Corp. v. United States,* 865 F.2d 240, 242 (Fed.Cir.1989).

Therefore, as long as the construction is reasonable and fair, Commerce's interpretation is permissible. *See Suramerica,* 966 F.2d at 665; *see also Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 866, 104 S.Ct. 2778, 2793, 81 L.Ed.2d 694 (1984).

Thus, Commerce's comparison of merchandise across different levels of trade is affirmed as reasonable and in accordance with law.

### 3. *Direct Selling Expenses*

■ Plaintiffs also contest Commerce's handling of direct selling expenses. In this case, in calculating U.S. price Commerce deducted direct selling expenses from exporter's sales price. Koyo now claims that Commerce should have added direct selling expenses in calculating foreign market value and that to deduct them from exporter's sales price was an abuse of discretion.

According to 19 U.S.C. § 1677a(e)(2) (1988), "the exporter's sales price shall also

be adjusted by being reduced by the amount, if any, of ... expenses generally incurred by or for the account of the exporter in the United States in selling identical or substantially identical merchandise."

This Court, however, has interpreted section 1677a(e) to refer to indirect rather than direct selling expenses, thereby limiting reductive adjustments of exporter's sales price under 19 U.S.C. § 1677a(e)(2) to indirect selling expenses. *See Timken,* 11 CIT at 802, 673 F.Supp. at 511; *NTN Bearing Corp.,* 14 CIT at 636–37, 747 F.Supp. at 738–39; *Koyo Seiko,* 16 CIT at ——, 796 F.Supp. at 1531.

In the present case, Commerce deducted direct selling expenses from exporter's sales price. *See Final Results* at 38,726. As such, this Court finds that Commerce has clearly misapplied the statute and has erroneously made an adjustment in exporter's sales price which is not in accordance with law.

Plaintiffs further claim that direct selling expenses should be treated as an addition to foreign market value. This Court has repeatedly held that " 'direct selling expenses are properly characterized as differences in circumstances of sale' " which may adjust foreign market value. *See Koyo Seiko,* 16 CIT at ——, 796 F.Supp. at 1531 (quoting *NTN Bearing Corp.,* 14 CIT at 637, 747 F.Supp. at 739); *Consumer Products Division, SCM Corp. v. Silver Reed America, Inc.,* 753 F.2d 1033, 1038 (Fed. Cir.1985); *Smith Corona Group, Consumer Prods. Div., SCM Corp. v. United States,* 713 F.2d 1568, 1577–78 (Fed.Cir. 1983), *cert. denied,* 465 U.S. 1022, 104 S.Ct. 1274, 79 L.Ed.2d 679 (1984).

This issue is therefore remanded to Commerce for recalculation of exporter's sales price, without an adjustment for direct selling expenses. In addition, Commerce shall also recalculate the foreign market value to reflect an adjustment for direct selling expenses.

4. *Below–Cost Sales*

██ Plaintiffs also claim that Commerce wrongfully excluded Koyo's home market below cost sales in its calculations of for-

eign market value, and furthermore that it improperly disregarded the evidence offered by plaintiffs in support of recovering the costs of selling TRBs at below the cost of production within a reasonable period of time and in the normal course of trade in calculating foreign market value.

When the ITA determines that home market sales have been made at below the cost of production, such sales are disregarded in the calculation of foreign market value if the sales "(1) have been made over an extended period of time and in substantial quantities, and (2) are not at prices which permit recovery of all costs within a reasonable period of time in the normal course of trade." 19 U.S.C. § 1677b(b) (1988 & 1992 Supp.).

In the case at hand, Koyo claims that Commerce ignored evidence submitted by Koyo that allegedly proved that such "below cost" sales were at prices that would permit full recovery of costs within a reasonable period of time in the normal course of trade.

Commerce made specific inquiries of Koyo regarding its capability to recover costs on its below cost home market sales. *See* AR (Pub.) Docs. 217, 243, 225. Koyo responded to each of these inquiries in letters dated March 6, 1989 (AR (Pub.) Doc. 232), and March 30, 1989 (AR (Pub.) Doc. 247). Commerce, however, deemed Koyo's responses insufficient stating that:

Koyo has not been able to demonstrate that it would have been able to recover costs of selling models below cost in the home market within a reasonable period of time. Koyo failed to respond to the Department's inquiry regarding reasons why its production costs were expected to decline, why these costs were not recovered until after the review period, and why, if costs were declining, as Koyo asserted, it made sales at below cost prices. Koyo neglected to explain all of the above in terms of general or model specific information. Nor did Koyo provide specific information to demonstrate how it expected to recover costs through its declining manufacturing costs and increased sales volume.

*Final Results,* 55 Fed.Reg. at 38,726 (Comment/Response 50).

Thus, Commerce did not "ignore" Koyo's responses, it simply deemed them unsatisfactory. Koyo further claims that Commerce failed to explain its determination on the record citing *Toho Titanium Co. v. United States,* 11 CIT 160, 167, 657 F.Supp. 1280, 1286 (1987). In *Toho,* the court stated that "[c]entral to a proper determination by Commerce is some discussion on the record as to why the prices charged on sales ... will not allow recovery of [the company's] costs in a reasonable period of time." *Id.* The standard as set forth in *Toho,* however, is inapplicable to the case at hand. In this case, Commerce fully explained its rationale at the administrative level for excluding Koyo's "below cost" sales as quoted above, and this Court is satisfied with that explanation. Therefore, this case is affirmed with regard to the issue of below cost sales.

### 5. *Clerical Errors*

Finally, Koyo claims that the computer program used by Commerce in this review to calculate the dumping margins contains significant clerical errors and that this case should be remanded for correction of these errors. Commerce and Timken concede that Commerce's computer program does in fact contain numerous clerical errors. Consequently, this case is remanded to Commerce to correct all clerical errors using the existing computer program.

### CONCLUSION

In accordance with the foregoing opinion, plaintiffs' motion is granted in part and this case is remanded to Commerce for (1) the consideration of all potential home market similar merchandise; (2) recalculation of exporter's sales price without an adjustment for direct selling expenses; (3) recalculation of foreign market value with an addition of direct selling expenses; and (4) correction of all computer programming errors. Commerce's determination is affirmed in all other respects. Remand results are due within ninety (90) days of the date this opinion is entered. Any comments or responses by the parties to the remand results are due within fifteen (15) days thereafter. Any rebuttal comments are due within fifteen (15) days of the date responses or comments are due.

### PARTIAL JUDGMENT

This case having been duly submitted for decision following plaintiffs' motion for judgment on the agency record, and the Court, after due deliberation, having rendered a decision herein; now then, in accordance with said decision,

IT IS HEREBY ORDERED that plaintiffs' motion is granted in part and this case is remanded to the Department of Commerce, International Trade Administration ("Commerce") for (1) the consideration of all potential home market similar merchandise; (2) recalculation of exporter's sales price without an adjustment for direct selling expenses; (3) recalculation of foreign market value with an addition of direct selling expenses; and (4) correction of all computer programming errors using the existing computer program; and it is further

ORDERED that Commerce's determination is affirmed in all other respects; and it is further

ORDERED that remand results are due within ninety (90) days of the date this opinion is entered. Any comments or responses by the parties to the remand results are due within fifteen (15) days thereafter. Any rebuttal comments are due within fifteen (15) days of the date responses or comments are due.

### ORDER ON MOTION FOR MODIFICATION

Upon consideration of defendants' consent motion for modification of Slip Op. 93–3, it is hereby

ORDERED that the motion is granted and that the U.S. Department of Commerce is authorized, upon remand, to utilize an improved computer program consistent with the methodology utilized in the original administrative review, as modified by this Court.